Emma NUNES, Administratrix of
The Estate of Manuel R. NUNES
also known as Manuel NUNES
vs.
Antone S. CABRAL, d/b/a CABRAL'S
POULTRY STORE also known as
BRIGHTMAN ST. POULTRY CO.

C.A. No. 7524

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

December 8, 1980

John Harris for the plaintiff.
John H. O'Neil for the defendant.
John O'Donoghue for the defendant.

## INTRODUCTION

In her Complaint, as amended, the plaintiff Emma Nunes, appointed June 21, 1978 as Administratrix of the Estate of Manuel Nunes ("Emma"), seeks damages pursuant to G.L. c. 229 on account of the alleged wrongful death of her husband Manuel Nunes ("Manuel") from pur-

portedly contaminated food sold by the defendant. In several counts of her Complaint Emma claims that the food was contaminated by the defendant's negligence and also that the defendant's sale of contaminated food breached what I assume to be the warranties implied by G.L. c. 106 § § 2-314 and 315. The defendant has defended on the basis that Emma has not proved that he was negligent and that the notice of breach of warranty which she provided to him was not provided "within reasonable time" as required by G.L. c. 106, § 2-607 (3)(a).

## FINDINGS OF FACTS

After the trial of this action from the evidence by way of testimony, exhibits, and inferences therefrom, I find the facts material and relevant to the relief sought by Emma in her Complaint as amended as follows: On or about May 2, 1978, one Joan Cabral, Emma's daughter and Manuel's daughter-in-law, purchased chickens and two containers of stuffing from the defendant or from one of his sons at the defendant's business premises for consumption later that day. Neither the chicken nor the stuffing appeared to be contaminated. Manuel, retired, who was then 70 years old and in reasonably good health for a person of that age, ate either the chicken or the stuffing or both for lunch. Thereafter later that day Joan Cabral, Joan Cabral's spouse, their two children, Manuel and Emma had dinner together. Joan Cabral's spouse and son each had meat and potatoes for dinner, while Joan Cabral, her daughter, Manuel and Emma each either had the chicken or the stuffing which Joan Cabral had purchased from the defendant earlier in the day, or both. Manuel, Emma, Joan Cabral, and her daughter all became quite ill within a day or so after having eaten the chicken or the stuffing or both. Their illness consisted of having diarrhea, of vomiting and of having fevers. Several other persons also became quite ill with the same symptoms at about the same time after having eaten either chicken or stuffing or both purchased from the defendant. The illnesses suffered by those several other persons, by the Cabrals, by Emma and by Manuel were all later diagnosed as resulting from salmonella poisoning. After having suffered substantial pain and suffering from on or about May 2, 1978, until May 13, 1978, Manuel on that latter date was admitted to Union Hospital in Fall River just before midnight. When he arrived in the emergency room at the hospital Manuel was sweating profusely, he was short of breath, his lungs were filled with fluids, his abdomen was distended and he appeared to be suffering from heart failure. After suffering additional substantial pain and suffering Manuel died at the hospital on May 19, 1978 of complications following salmonella poisoning caused by the food sold to his daughter-in-law by the defendant who failed to make the unwholesome condition of the food sold known to the daughter-in-law. Manuel's medical expenses as a consequence total $110.00 and the hospital bill came to $2,280.49. Each were and are reasonable and necessary. The funeral bill as a consequence of Manuel's death came to $1890.00 which is also reasonable and necessary.

Prior to his death Manuel had been retired for 12 years having formerly worked as a truck driver. Manuel's income at his death included a pension of $268.00 each month plus a $200.00 "bonus" at Christmastime from the truck drivers' union plus $292.00 each month in Social Security benefits. Upon Manuel's death his pension ceased and Emma received and has received 70% of his Social Security benefits or $229.00 each month. When he died Manuel had a further life expectancy of 10.6 years. I find the fair monetary value of Manuel to Emma as referred to in G.L. c. 229, § 2 to be $25,000.00 and that approximate damages for pain and suffering to be $5,000.00. I find that an award of primitive damages would not be appropriate on the facts here.

The Complaint in this action was filed on August 30, 1978 and alleged only a claim for negligence. The defendant filed an Answer dated October 6, 1978 on October 10, 1978 and in his "affirmative defense" numbered 6, the defendant claimed, "No notice was given to the defendant of any alleged breach of warranty." Thereafter, by a notice dated October 11, 1978 (see

exhibit no. 25) the plaintiff gave notice of an alleged breach of warranty indicating that the sale of the chicken and stuffing was made on May 14, 1978. Parenthetically, Exhibit 26 dated May, 1980 proports to amend that notice by indicating that the correct date of the sale was May 2, 1978. The plaintiff's December 20, 1978 Motion to Amend her Complaint to include a claim for breach of warranty was allowed on January 8, 1979. Emma knew at or about the time of Manuel's death that Manuel's death resulted from complications following salmonella poisoning caused by food sold by the defendant, and she offered no excuse why she did not provide notice to the defendant prior to October 11, 1978.

## RULINGS OF LAW

With respect to the plaintiff's claim for breach of warranty, on the basis of the facts set out above, I rule that as a matter of law the notice provided by Emma to the defendant was not reasonable as required by G.L. c. 106, §2-607(3)(a). See **Putnam vs. The Great Atlantic & Pacific Tea Company**, 304 Mass. 364 (1939), where at 366 the Court pointed out that:

> Ordinarily it is a question of fact, sometimes a mixed question of law and fact, and in some instances a question of law, whether the notice given fairly complies with the requirements of the statute.

In **Murphy v. Gilchrest Company**, 310 Mass. 635 (1942) where notice was not given until forty days after a buyer knew or ought to have known of a breach of warranty, the Court appeared to rule as a matter of law that the notice was unreasonable. The Court, at 637, stated that:

> What is a reasonable time must be determined in view of the circumstances of each particular case and will vary widely in different types of cases. But in a case of this kind where the buyer has the necessary knowledge and shows no reason for delay the seller may be deprived of the protection which the statute was designed to afford him unless the notice is given more promptly than was done in this case . . . In comparable cases in which the reasonableness of the time has been held to be for the jury, either the time was shorter or reason for the delay appeared.

See generally, Annotation, Breach of Warranty — Timeliness of Notice, 93 ALR 3rd 363 at 391-2.

With respect to Emma's claim for negligence, I note that the doctrine of res ipsa loquitur is not available to her. See **Mallace vs. John P. Squire Co.**, 306 Mass. 515 at 516 (1940). As indicated in that decision citing **Blanchard vs. Kronick** 269 Mass 464-465, "The mere fact that the chickens were unwholesome when eaten would not justify a finding that the defendant was negligent." Further, as was also indicated in that decision, as in this case, "there was no evidence of any specific negligent act or omission on the part of the defendant with respect to the chickens it sold." However, all is not lost for Emma. The defendant has violated the provisions of a penal statute G.L. c. 94, §150, which is referred to in the **Mallace** case, and which provides in relevant part "Whoever . . . sells . . . for food . . . any diseased . . . or unwholesome . . . meat or . . . provisions of any kind . . . without making the condition of the thing sold . . . fully known to the buyer shall be punished . . ." In this case, as in **Schuler v. Union News Co.**, 295 Mass. 350 (1936), "There was no readily discoverable foreign matter in the food" . . . There was no evidence of negligence apart from a violation of G.L. c. 94, §150." As indicated in **Schuler** at 355 "A violation of a penal statute is evidence of negligence, as to all consequences that the statute was intended to prevent, without condition or qualification." Unlike as in **Mallace**, Emma did not fail to show that the defendant did not make known to Joan Cabral the unwholesome condition of the food sold. Thus, Emma is entitled to prevail on her negligence claim.

## ORDER

On the basis of the above Rulings of Law, I ORDER that judgment enter in this case for Emma on her negligence claim for the sum of $25,000 plus $5,000 plus $2280.49 plus $110 plus $1890, or a total of $34,280.49, plus interest and costs. I

ORDER that judgment enter for the defendant on Emma's other claims.

Paul G. Garrity
Justice of the Superior Court